# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMAR SAUNDERS,** : | |
| **Petitioner** : | |
| : | **CIVIL ACTION NO. 3:CV-14-501** |
| v. : | |
| : | **(Judge Mannion)** |
| **Warden, J.E. THOMAS** : | |
| **Respondent** : | |

## MEMORANDUM

Jamar Saunders, an inmate confined in the United States Penitentiary, Lewisburg, Pennsylvania (FCI-Allenwood) filed the above captioned petition for a writ of habeas corpus, pursuant to 28 U.S.C. §2241. (Doc. 1, petition). He challenges Incident Report No. 2498106, charging him with fighting and refusing a direct order. Id. Specifically, Saunders claims prison staff denied him a staff representative to assist him during his October 29, 2013 hearing. Id. at 6-7.

For relief, Saunders seeks expungement of the incident report and the restoration of lost good time credits. Id. at 8. Alternatively, Saunders requests the Court order Respondent to grant him a rehearing, allowing him to proceed with a staff representative. Id. The petition is ripe for disposition and, for the reasons that follow, will be denied.

**I.      Background**

On September 29, 2013 at approximately 9:30 p.m., Senior Officer Matthew Fredrick delivered Incident Report No. 2498106 to Saunders charging him with fighting with another person, a Code 201 violation and refusing to obey an order, a Code 307 violation. (Doc. 5-2 at 7, Incident Report). The incident report reads as follows:

> On the above date and time[1], this officer approached B-Block, cell 102 which houses Inmates Saunders #43376-037 and [redacted]. At this time, both inmates began fighting with each other. Specifically, the inmates began striking each other in the head and upper torso with closed fists. I gave the inmates several direct orders to cease their actions and submit to hand restraints. Inmate Saunders failed to comply with all orders. I then called for assistance.

Id. On October 3, 2013, Petitioner appeared before the Unit Discipline Committee ("UDC"). (See Id., Committee Action). Based on the severity of the prohibited act, the UDC referred the charge to the Discipline Hearing Officer ("DHO"), recommending "to change negative behavior, UDC recommends that the DHO apply all appropriate sanctions." Id. During the UDC hearing, staff member, B. Tharp, informed Saunders of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Id. at 10, Inmate Rights at Discipline Hearing).

---

[1]The incident occurred on 9/29/2013, at 8:31 p.m. Id.

2

Also on October 3, 2013, Saunders was provided with a "Notice of Discipline Hearing before the (DHO)" form. (Id. at 9). Saunders did not request any witnesses, but requested to be represented by staff member, A. Cotterall. Id.

On October 9, 2013, Petitioner appeared for a hearing before DHO, B. Chambers. (Doc. 5-2 at 20-22, DHO Report). During the DHO hearing, Petitioner was again read his rights, and he indicated that he understood them. Id. The DHO confirmed that Saunders received a copy of the incident report. Id. The DHO advised Saunders that Ms. Cotterall was not available to be his staff representative, due to her work assignment the week of the hearing, and that Saunders had the option to postpone the hearing until such time as Ms. Cotterall was available, or to obtain another staff representative. Id. Saunders stated that he wished to waive his right to staff representation and proceed with the hearing. Id. Saunders was not able to sign, or initial, the BP-294, documenting his waiver of his right to a staff representative, as his hands were restrained behind his back during the hearing. Id.

Petitioner offered the following statement on his behalf:

Inmate Saunders testified that he is not disputing the accuracy of Section 11 of the incident report in this case. Inmate Saunders testified the incident "is all on me". Saunders testified he was trying to get moved to a different cell, away from inmate

3

[redacted], because, "it was time for a change." Saunders testified "it didn't seem like staff were going to do anything about it unless things got physical, so when the number one came up to the door, I started hitting him [redacted]. He [redacted] didn't really want to fight, but I didn't give him a choice. I'm the one that did it."

Id. Petitioner raised no complaints of procedural errors during the hearing. Id.

In addition to the Incident Report and Investigation, the DHO considered the following documentary evidence: (1) Memoranda of Sherman and Carper, dated September 29, 2013; (2) Bureau of Prisons Health Services Clinical Encounter forms, dated September 29, 2013, prepared with regard to inmates [redeacted] and Saunders, #43376-037, (3) Photographs of inmates [redeacted] and Saunders, dated September 29, 2013, taken following the incident. (Id. at 21). The specific evidence relied on to support the findings was as follows:

> The DHO finds inmate Saunders committed the prohibited act of Fighting. This finding is based upon the eyewitness written account of the reporting officer, which indicates on 9-29-2013 at 8:31 p.m., the reporting officer approached cell B-102, housed by inmates Saunders, #433765037, and [redacted] and observed the two inmates begin fighting with each other. Specifically, the inmates began striking each other in the head and upper torso with closed fists. The reporting officer have both inmates several direct orders to cease their actions and submit to restraints. Inmate Saunders failed to comply. The reporting officer called for assistance.
>
> This finding is further based upon the testimony of Saunders, in which he admitted that he is not disputing the accuracy of Section

> 11 of the incident report in this case. Inmate Saunders testified the incident "is all on me". Saunders testified he was trying to get moved to a difference cell, away from inmate [redacted] because "it was time for a change". Saunders testified "it didn't seem like staff were going to do anything about it unless things got physical, so when the number one came to the door, I started hitting him [redacted]. He [redacted] didn't really want to fight, but I didn't give him a choice. I'm the one that did it."
>
> The evidence in this case, therefore, supports the finding inmate Saunders committed the prohibited act of Fighting, Code 201.

Id. The DHO sanctioned Saunders to thirty (30) days disciplinary segregation; loss of twenty seven (27) days Good Conduct Time; and ninety (90) days loss of telephone and visiting privileges. The DHO documented his reasons for the sanctions given as follows:

> Fighting in a correctional institution inherently jeopardizes the security and good order of the institution. The rationale for the sanctions imposed in this case, therefore, is to punish the inmate for his misconduct, which is viewed as having an adverse effect on the security and orderly operation of the institution, as well as to deter future misconduct. Disciplinary segregation is imposed as punishment for the misconduct. Disallowed Good Conduct Time is imposed to demonstrate that engaging in misconduct will prolong inmate Saunders' period of incarceration. Loss of telephone and visiting privileges are imposed to demonstrate that engaging in misconduct will result in the loss of pleasurable privileges while incarcerated.

Id. Saunders was advised of his appeal rights at the conclusion of the hearing. Id.

5

## II.   **Discussion**

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141 (3d Cir.2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id. Since Petitioner's sanctions did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are

6

involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir.1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

The Bureau of Prisons has enacted specific procedures for disciplinary proceedings. 28 C.F.R. §541.1, et seq. Under these procedures, a staff member charges a prisoner with committing a prohibited act by issuing an incident report. 28 C.F.R. §541.5(a). The incident report ordinarily must be issued within 24 hours of the time the staff member became aware of the prisoner's involvement in the incident. Id. The incident is then investigated. Id. at §541.5(b).

After the incident is investigated, the UDC reviews the incident report and takes one of the following actions: 1) finds that the prisoner committed the prohibited act charged and/or a similar prohibited act as reflected in the

incident report; 2) finds that the prisoner did not commit the prohibited act charged; or 3) refers the incident report to the DHO for further review. Id. at §541.7(a). Prohibited acts are separated into four categories based on severity: Greatest, High, Moderate, and Low. Id. at §541.3(a). If a prisoner is charged with a prohibited act in the Greatest or High category, the UDC automatically refers the incident report to the DHO for further review. Id. at §541.7(a)(4).

Under the regulations, when an incident report is referred to the DHO, a disciplinary hearing is conducted in accordance with the procedures set forth at [28 C.F.R. §541.8](). The prisoner is entitled to notice of the charges at least 24 hours before the hearing. Id. at §541.8(c). The prisoner is entitled to appear at the hearing and is entitled to staff representation at the hearing. Id. at §541.8(d) & (e). The prisoner is entitled to make a statement and to present documentary evidence. Id. at §541.8(f). A prisoner may request to have witnesses appear at the hearing on his behalf, but the DHO may refuse to call requested witnesses if they are not reasonably available, if their presence would jeopardize institutional security, or if they would present repetitive evidence. Id. The DHO considers all evidence presented at the hearing. Id. The decision of the DHO must be based on at least some facts and, if there

is conflicting evidence, the decision must be based on the greater weight of the evidence. Id. Following the hearing, the DHO must provide a written report documenting that the prisoner was advised of his rights. Id. at §541.8(h). The report must document the evidence relied upon by the DHO, the findings of the DHO, the sanctions imposed by the DHO, and the reasons of the DHO for imposing those sanctions. Id.

In the instant case it is clear from the record that Saunders was afforded all of the required procedural rights set forth in Wolff. He received timely notice of the incident report. He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf.

Saunders alleges that he was denied due process when he was denied representation by Ms. Cottrell at his hearing. The record, however, demonstrates that the DHO informed Saunders on the date of the hearing that Ms. Cottrell was unavailable and gave him the opportunity to conduct the hearing on a date when Ms. Cottrell was available, to allow the DHO to appoint a different staff representative, or to waive his right to a staff representative. (Doc. 5-2 at 20-22, DHO Report). Petitioner chose to waive his

right to a staff representative. Id. To the extent that Saunders claims that he did not knowingly make this decision, the record reflects that the DHO explained the available options to Saunders, and, although he was unable to sign the waiver form because his hands were restrained behind his back throughout the hearing, he did indicate to the DHO that he wished to decline staff representative on the date of the hearing. Id. Petitioner was then afforded an opportunity to make a statement, which was documented in the DHO's report. He then received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision, and was notified of his right to appeal.

With respect to Petitioner's claim that the DHO "was prejudice towards [him], (Doc. 1 at 7), this claim is wholly unsupported. Pursuant to BOP policy, "[i]n order to insure impartiality, the DHO may not be the reporting officer, investigating officer, or UDC member, or a witness to the incident or play any significant part in having the charge(s) referred to the DHO." See 28 C.F.R. §541.16(b). In this case, the DHO was neither involved in reporting or investigating the incident with regard to Petitioner, and there is nothing in the record to suggest that the DHO was a witness to or played a role in having the charges against Petitioner referred to the DHO. Thus, the court finds no

10

procedural violations.

Since Saunders was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. To the extent Saunders would allege there was not enough evidence to find he had committed the prohibited act, the decision of the DHO is entitled to considerable deference by a reviewing court and the decision should be upheld if there is "some evidence" to support the decision. In Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445 (1985), the Supreme Court held that the "some evidence" standard applies in addressing a state prisoner's due process claim. Id. at 456-57; see Thompson v. Owens, 889 F.2d 500, 501- 02 (3d Cir. 1989).

The United States Court of Appeals for the Third Circuit observed that the standard found in 28 C.F.R. §541.17(f) (1986) was more stringent than the "some evidence" standard. Henderson v. Carlson, 812 F.2d 874, 879 (3d Cir. 1987). The Court concluded that the "substantial evidence" standard in §541.17(f) (1986) was "clearly higher than any standard that the Constitution imposes on prison disciplinary proceedings." Id. In 2007, §541.17(f) was amended and no longer includes the "substantial evidence" standard. 28 C.F.R. §541.17(f) (2007). Section 541.17(f) (2007) now requires that a DHO's

11

decision be based on "some facts" and, if there is conflicting evidence, the decision is based on "the greater weight of the evidence." Id.

A DHO need not accept what the inmate perceives to be the "best" or most convincing or persuasive set of facts. Rather, under Hill, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56. This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. A disciplinary committee's resolution of factual disputes should not subject to review where the standard in Hill is satisfied. Id.

In this case, the record clearly reveals the existence of both testimony offered and documentary evidence submitted at the hearing to allow the DHO to conclude that the greater weight of the evidence supported a finding of guilt. In addition to the statement provided by Petitioner, the DHO also considered the investigative report and staff memoranda submitted. In accordance with Hill, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56. In this instance, there is "some evidence" to support the decision of the DHO.

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. §541.13. Petitioner was found guilty of a

200-level, high category prohibited act. Pursuant to 28 C.F.R. §541.13, the following are the sanctions available for 200-level offenses:

- A. Recommend parole date rescission or retardation.
- B. Forfeit earned statutory good time or non-vested good conduct time up to 50%, or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
- B.1. Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
- C. Disciplinary Transfer (recommend)
- D. Disciplinary segregation (up to 30 days).
- E. Make monetary restitution.
- F. Withhold statutory good time.
- G. Loss of privileges: commissary, movies, recreation, etc.
- H. Change housing (quarters).

Thus, the sanctions imposed by the DHO in the present case were consistent with the severity level of the prohibited act and within the maximum available to the DHO. Accordingly, the petition will be denied.

### III. Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. §2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a §2241

habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264–65 (3d Cir. 2000)(en banc) (certificate of appealability not required to appeal from denial of §2241 petition), *abrogated on other grounds by* Gonzalez v. Thaler, ––– U.S. –––, –––, 132 S.Ct. 641, 649, 181 L.Ed.2d 619 (2012); Kornegay v. Ebbert, 502 Fed.Appx. 131, 133 (3d Cir. 2012). Thus, the Court need not address this issue in the current action.

## IV.   Conclusion

For the reasons stated above, the petition for a writ of habeas corpus will be **DENIED**.  A separate Order will be issued.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: July 2, 2015**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-0501-01.wpd